UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| EVERT L. MARRS, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| vs. | ) | 1:07-cv-1379-TAB-RLY |
| | ) | |
| JPMORGAN CHASE BANK, N.A. | ) | |
| Successor by merger with | ) | |
| BANK ONE, N.A., | ) | |
|     Defendant. | ) | |

**ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**I.   Introduction[1]**

Evert L. Marrs sued JPMorgan Chase ("the Bank") for breach of contract, breach of fiduciary duty, negligence, bad faith, RICO violations, and punitive damages. [Docket No. 24.] The Bank moved for summary judgment [Docket No. 41] on several grounds, most notably that the statute of limitations bars Marrs's claims. Marrs concedes that summary judgment is appropriate on his RICO and punitive damages claims [Docket No. 46 at 18, 22], leaving for resolution Marrs's claims for breach of contract, breach of fiduciary duty, negligence, and bad faith.

**II.   Statement of Facts**

The parties agree on many of the facts underlying this dispute. In 1988, Marrs and his wife purchased two "certificates of deposit" with Bank One as joint tenants with right of survivorship for a total of $41,739.63. [Docket No. 24, Exs. A–B.] The terms and conditions of

---

[1] Plaintiff has requested oral argument on Defendant's motion for summary judgment. However, Plaintiff provides no particular reason why an oral argument would be necessary or helpful, and the record presents no issues that need the further examination oral argument provides. The Plaintiff's motion for oral argument [Docket No. 47] is therefore denied.

each CD provided that unless the funds were withdrawn within ten days after the maturity date, the CD would be renewed automatically for a period equal to the initial maturity period, and thereafter for successive periods.  [Docket No. 46, Ex. 10 at 1–2.]  For each CD, Bank One provided the Marrses with a written receipt.  Marrs took the receipts home and placed them in his personal files for safekeeping.  [Docket No. 46, Ex. D at 24.]

In 1993, Marrs's wife passed away.  Marrs remarried in 1994, moving and taking the receipts with him.  [Docket No. 42, Ex. 5 at 2.]  In early 1994, Marrs received a 1099 annual report of interest earned on the CDs for the 1993 tax year.  [Docket No. 42, Ex. 9.]  The 1099 was addressed to Marrs and his son.  However, for tax years beginning in 1994, Marrs did not report on his tax return any interest earned on the CDs.[2]  [Docket No. 42, Ex. 10.]  For these years, Marrs's income was less than the principal amount of the CDs.  [*Id.*]

Bank One and JPMorgan Chase merged in 2004, retaining the same account numbers.  In the spring of 2007, Marrs located the receipts at his home.  [Docket No. 42, Ex. 12 at 26.]  Marrs then attempted to obtain payment of the CDs at the Walnut Station Branch of the Bank in Bloomington, Indiana.  [Docket No. 42, Ex. 5 at 2.]  The Bank did not redeem the CDs because it could not find any record of them on its computer system.  [Docket No. 46, Ex. E at 67.]

---

[2] The Bank claims that Marrs reported no interest income on the CDs from 1994 to 2007. [Docket No. 42 at 12.]  In support of this assertion, the Bank designated Marrs's tax documents from 1994 to 2001 and 2004 to 2007.  [Docket No. 42, Ex. 10.]  The documents from 1994 to 2000 show only adjusted gross income and taxable income, not the sources of that income. Therefore, this designated evidence does not support the Bank's assertion that Marrs received no interest during that time.
     The documents for 2001 and 2004 to 2007 list more specifically the sources of income and show interest income from JPMorgan Chase checking and savings accounts, but not from CDs.  These documents support the Bank's assertion that Marrs received no interest during those years.  However, Marrs does not dispute the Bank's claim that he did not report interest income from the CDs from 1994 to 2007.

Marrs also took the receipts to the Bank's main Bloomington office, but was again unable to redeem the CDs.  [Docket No. 42, Ex. 5 at 1.]

Marrs next filed a formal complaint with the Comptroller of Currency on May 23, 2007.  The Bank responded to Marrs's complaint with a letter on June 12, 2007, explaining:

> [w]e conducted a thorough search of our bank systems using your name and as well as that of your late wife, Ms. Betty J. Marrs, and found no records pertaining to these two CDs.  Our record retention period is seven years, including microfiche and microfilm, therefore if the CDs were closed prior to June 2000, we would no longer have record of it.

[Docket No. 46, Ex. L.]  The Bank searched its computer system under the names and social security numbers submitted and searched its unclaimed property database along with Indiana's unclaimed property database.  [Docket No. 46, Ex. G at 37–38, 40.]

On October 24, 2007, Marrs filed this suit against the Bank.  [Docket No. 1.]   The parties dispute whether the CDs were ever redeemed.  Marrs asserts that "[n]either Mr. Marrs, Mrs. Marrs, nor anyone acting on their behalf, has ever received any of the funds that were contained in the CDs."  [Docket No. 46, Ex. H at 2.]  Marrs's son asserts that he has "never redeemed, nor attempted to redeem, either CD at issue."  [Docket No. 46, Ex. I at 2.]  The Bank asserts that it "searched in every way possible for any information or any evidence relating to the time deposits, but nothing appeared in [its] system," and the absence of records "means that the time deposits were paid out more than seven years ago."  [Docket No. 42 at 10.]

The Bank designated evidence about its procedures regarding CDs such as these.  [Docket No. 42, Ex. 6 at 12, 17; Docket No. 42, Ex. 8 at 17–28.]  Marrs does not dispute the following procedures.  Prior to a CD's maturity date, the Bank sends the customer a written notice of renewal.  The Bank sends a second notice after the CD is renewed stating the new

maturity date and rate of interest for the renewal period.  Annually, the Bank sends an IRS Form 1099—a statement of interest earned for each deposit for the calendar year.  The Bank maintains its CD records, including 1099s, for seven years after payment.  [Docket No. 42, Ex. 8 at 30–31.]  The Bank notes that under its procedures, Marrs would have received 126 documents pertaining to the CDs between 1994 and 2007.  [Docket No. 50 at 7.]  Marrs has produced no documents for those years.  Further, the Bank does not require a receipt to redeem a CD because deposits are recorded on the Bank's computer system.  [Docket No. 42, Ex. 7 at 30.]

### III. Discussion

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)).

The Bank argues that the UCC's three-year statute of limitations, Ind. Code § 26-1-4-111 (2008), bars all of Marrs's claims.  [Docket No. 42 at 16.]  Marrs responds that section 26-1-4-111 does not apply because Marrs has not alleged any UCC violations.  [Docket No. 46 at 13.]  The Bank also argues that Marrs's negligence and breach of fiduciary duty claims are barred by the traditional two-year statute of limitations, I.C. § 34-11-2-4.

Under Indiana law, both tort and contract actions accrue and the statute of limitations begins to run "when the plaintiff knew or, in the exercise of ordinary diligence, could have

discovered that an injury had been sustained . . . ."[3] *Filip v. Block*, 879 N.E.2d 1076, 1082 (Ind. 2008) (quoting *Wehling v. Citizens Nat'l Bank*, 586 N.E.2d 840, 843 (Ind. 1992)); *see also Meisenhelder v. Zipp Express, Inc.*, 788 N.E.2d 924, 930 (Ind. Ct. App. 2003) (applying discovery rule to breach of contract claims). Application of the discovery rule in this type of case has the desirable effect of requiring the plaintiff to bring suit when key pieces of evidence—the bank records—still exist. *Cf. Spiller v. Sky Bank*, 910 N.E.2d 1021, 1024–25 (Ohio 2009) ("Were it otherwise, a bank could never dispose of records relating to an automatically renewing certificate of deposit without subjecting itself to liability on a claim that the account was never actually closed."). The Bank designated evidence that it retains account records for seven years after an account is closed. [Docket No. 42, Ex. 8 at 30–31.]

Regardless of which statute of limitations applies—three years under the UCC, two years under the traditional statute of limitations for torts, or ten years under the statute of limitations for breach of a written contract—Marrs is too late. Marrs did not declare interest income from the CDs on his tax returns after 1994. This undisputed fact undermines Marrs's claims. If Marrs had income from the CDs after 1994, he was obligated to report this income on the tax returns he filed under oath with the Internal Revenue Service. Because Marrs reported no CD income after 1994, it follows that Marrs had no CD income since that time. More to the point, because Marrs reported no interest income from the CDs on or after 1994, he was on notice that the Bank was

---

[3] Marrs points to *Erwin v. Erwin*, 41 N.E.2d 644, 647 (Ind. Ct. App. 1942), for the proposition that "the statute of limitations does not begin to run against a certificate of deposit issued by a bank, payable upon the return of a certificate properly endorsed until such certificate has been returned and demand for payment made." However, *Erwin* was decided before Indiana adopted the discovery rule for all tort and contract claims. *Wehling*, 586 N.E.2d at 843 (torts); *Meisenhelder*, 788 N.E.2d at 930 (contracts).

not paying him interest on or after 1994. This of course put Marrs on notice that the Bank did not believe it owed him interest income on the CDs on or after 1994. Thus, the exercise of ordinary diligence should have revealed to Marrs his claimed injury.

This is especially true because the principal amount of the CDs was more than Marrs's annual income, and Marrs claims that he never forgot the CDs existed. [Docket No. 46, Ex. H at 2.] Other than the receipts—which prove nothing because they had no value and were not necessary to obtain payment—Marrs has not presented any evidence to show that the CDs were open in or after 1994. Marrs's lack of documentation is telling because the evidence shows that he would have received a voluminous amount of records from the Bank between 1994 and 2007 had the CDs remained open. Also telling is that Marrs never contacted the Bank to pursue this issue between 1994 and 2007 despite his failure to receive numerous renewal notices and 1099s.

Because over thirteen years passed between when Marrs could have discovered any injury and when he filed his complaint, his claims are barred no matter which statute of limitations applies. Summary judgment for the Bank is therefore appropriate on all of Marrs's claims.

## IV. Conclusion

Marrs brings his claims far too late, and therefore they are subject to dismissal. Were the Court to hold otherwise, the Bank would be subject to a virtually limitless statute of limitations, which would be contrary to Indiana's discovery rule. For these reasons, the Court grants the Bank's motion for summary judgment [Docket No. 41] as to all of Marrs's claims.

Dated: 10/6/2009

_____

Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

Copies to:

Timothy Loren Karns
PARR RICHEY OBREMSKEY FRANDSEN & PATTERSON LLP-Lebanon
tkarns@parrlaw.com

Thomas M. McDonald
APPLEGATE MCDONALD & ASSOCIATES, P C.
amalawoffices@sbcglobal.net

Peter L. Obremskey
PARR RICHEY OBREMSKEY FRANDSEN & PATTERSON LLP
jdouglas@parrlaw.com

Matthew R. Strzynski
KRIEG DEVAULT LLP
mstrzynski@kdlegal.com